UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARY BETH ALMANZAR,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-00218-LJV
DECISION & ORDER

---

On February 20, 2019, the plaintiff, Mary Beth Almanzar, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 14, 2019, Almanzar moved for judgment on the pleadings, Docket Item 10; on January 13, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on February 3, 2020, Almanzar replied, Docket Item 13.

For the reasons stated below, the Court grants Almanzar's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Almanzar argues that the ALJ erred in two ways.  Docket Item 10-1.  She first argues that the ALJ erred in rejecting the opinions of two of her treating physicians and that her physical residual functional capacity ("RFC") consequently was not supported by substantial evidence. *Id.* at 12-18.  She also argues that the ALJ erred in ignoring favorable portions of an opinion to which the ALJ assigned great weight in determining Almanzar's mental RFC. *Id.* at 18-20.  This Court agrees that the ALJ erred in both respects and, because those errors were to Almanzar's prejudice, remands the matter to the Commissioner.

**I.     PHYSICAL RFC**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  See 20 C.F.R. § 404.1527(a)(2), (c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before giving less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  These are the so-called "Burgess factors" from Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008).  Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating source opinion "is a procedural error."  Id. at 96 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ gave "little" weight to the various assessments of two of Almanzar's treating physicians—pain management specialist Daniel Salcedo, M.D., and physiatrist Andrew C. Matelliano, M.D.— that Almanzar was "[m]arked[ly]—75%" impaired.  *See* Docket Item 6 at 377-405 (Dr. Salcedo, July 2015 to September 2015); *id.* at 410-34 (Dr. Salcedo, October 2015 to January 2016); *id.* at 449-503 (Dr. Salcedo, January 2016 to July 2016); *see also id.* at 523-40, 580-86 (Dr. Matteliano opining to the same, across ten monthly appointments from March 2017 to January 2018). *Cf. id.* at 669 (Dr. Salcedo, January 2017 opinion of "moderate partial, 50%" impairment).  The ALJ explained that both providers' assessments were "based on the rules and regulations of a different regulatory framework, namely that established under the New York State Workers' Compensation statute."  *Id.* at 30.  "Further," the ALJ noted, "the assessments sp[o]k[e] to the ultimate issue of disability reserved to the [C]ommissioner, rather than providing a function-by-function analysis of [Almanzar's] work-related capabilities and limitations."  *Id.*  As a result, the ALJ chose to rely on the February 2016 opinion of a consulting physician, internist Rita Figuera, M.D., to which she gave "significant" weight.  *Id.*  The ALJ observed that Dr. Figueroa had "program knowledge and [her opinion was] consistent with the record[, which] . . .  document[ed] only ongoing conservative treatment, limited objective findings on clinical examination, and some limitations in activities of daily living."  *Id.*

As Almanzar correctly observes, the ALJ did not explicitly address the *Burgess* factors before assigning "little" weight to the statements of Drs. Salcedo and Matteliano—an apparent "procedural error."  *See Estrella*, 925 F.3d at 96*.*  The Commissioner responds that the ALJ did not, in fact, err because neither assessment

constituted true medical "opinion" evidence so as to merit the deference due opinions from treating physicians.  *See* Docket Item 12-1 at 8-10.  And the Commissioner may well be correct.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1); 416.927(a)(1).  "Opinions on some issues, such as [an opinion that a claimant is "disabled" or "unable to work"], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner . . . ."  20 C.F.R. § 404.1527(d)(1); 416.927(d)(1).

But the fact that Dr. Salcedo's and Dr. Matelliano's assessments may not have been "medical opinions" would not end the matter; on the contrary, that would only raise another issue.  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination").  Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)).  On the other hand, "where there

are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

The Commissioner's own regulations reflect this duty, explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[2]) (additional citation omitted). The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is

---

[2] This section was amended, effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Almanzar applied for disability benefits starting October 2015—that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

6

appropriate where the records are not otherwise complete.  *See Tankisi*, 521 F. App'x at 34.  That is the case here.

Having minimized Dr. Salcedo's and Dr. Matelliano's "opinions"—or mere assessments—the ALJ was left with only one medical opinion from which to construct Almanzar's physical RFC:  the opinion of the consulting physician, Dr. Figueroa.  But it is far from clear how the ALJ could have used Dr. Figueroa's opinion that Almanzar had "moderate limitations [in] repetitive bending, lifting, and carrying," Docket Item 6 at 443, to conclude, for example, that Almanzar could "occasionally climb ramps and stairs" and "occasionally balance, stoop, kneel, crouch[,] and crawl," *id.* at 24.  It also is not clear how the ALJ might have used Dr. Figueroa's opinion that Almanzar had "mild limitations [in] pushing, pulling, and reaching," *id.* at 24, to conclude that Almanzar could "frequently reach in all directions[,] . . . push and pull[, and] . . . finger and handle with the bilateral upper extremities," *id.* at 443.  Stated differently, the ALJ failed to construct "an accurate and logical bridge" between the information in the record and Almanzar's RFC, *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)), frustrating this Court's efforts to "assess the validity of the agency's ultimate findings and afford [Almanzar] meaningful judicial review," *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir.2004)).

More significantly, although the opinion of a consultative examiner can in some circumstances provide substantial evidence in support of an ALJ's conclusions, *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983), the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians

7

after a single examination," *Estrella*, 925 F.3d at 98 (quoting *Selian*, 708 F.3d at 419)). That admonition seems particularly appropriate here, where Almanzar suffered from a multitude of chronic and overlapping health conditions, and her long-term treatment providers—those most able to "provide . . . detailed, longitudinal picture[s] of [her] medical impairments," *see* 20 C.F.R. § 416.913(a) (2015)—agreed that her conditions were severe and disabling.

Indeed, although Dr. Salcedo's and Dr. Matelliano's opinions were not provided in the standard form and format used by the Social Security Administration, their consistency with each other over the years suggested that Dr. Figueroa's assessment was incomplete—that is, that her assessment reflected an "obvious gap in the record." Dr. Salcedo repeatedly found that Almanzar's "complaints [were] consistent with her history of . . . injury/illness"—a September 2010 workplace injury—as well as "[his] obj[ective] findings." *Id.* at 502. Those findings included reduced range of motion in the cervical and lumbar spine and long-standing diagnoses of lumbar-region and lumbo-sacral region spondylosis, lumbar-region radiculopathy, and unspecified neuralgia and neuritis. *See* Docket Item 6 at 377-405 (July 2015 to September 2015); *id.* at 410-34 (October 2015 to January 2016); *id.* at 449-503 (January 2016 to July 2016). Based on these objective findings and observations, Dr. Salcedo consistently opined that Almanzar was markedly limited in her ability to work. *See id. Cf. id.* at 669 (January 2017 opinion of "moderate partial, 50%" impairment). Dr. Matteliano reached the same conclusions based on similar findings. *See* Docket Item 6 at 523-25 (Dr. Matteliano's March 2017 treatment note observing pain, tenderness, and reduced range of motion in the cervical and lumbar spine and opining that Almanzar had a "marked partial

permanent disability" causing a "75%" impairment); *id.* at 526-40, 580-86 (same, across nine monthly appointments from April 2017 to January 2018); *see also id.* at 580-81 (Dr. Matelliano noting long-standing diagnoses of "repetitive lifting injury, injury to neck and low back, . . . [m]ultiple cervical disc bulges in cervical spine along with disc herniation, . . . [and] some spinal stenosis" and observing that Almanzar had "very reduced walking distances, poor sitting tolerance[ ], . . . neck turning [of] about 30 degrees[,] . . . low back bending [of] about 40 degrees[, and] . . . neck and low back tenderness").

What is more, Dr. Salcedo's and Dr. Matelliano's statements also were supported by other opinions and treatment notes in the record. For example, in November 2016, Almanzar's primary care provider, internist Gomez Ellis, M.D., observed decreased range of motion and tenderness to palpitation in the low back and neck. *Id.* at 675; *see also id.* at 961 (same, August 2014).

Finally, remand is appropriate here because the ALJ's error in failing to solicit an opinion from a treating source likely inured to Almanzar's prejudice. The ALJ found that Almanzar

> [could] perform light[3] work . . . except [she] can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch[,] and crawl; cannot work at unprotected heights or around dangerous machinery; can frequently reach in all directions with the bilateral upper extremities; can frequently push and pull with the bilateral upper extremities; cannot feel with the dominant right hand;

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

>can frequently finger and handle with the bilateral upper extremities; and cannot operate foot controls with the bilateral feet.

*Id.* at 24.  Although it is impossible to say with certainty what parts of that RFC Dr. Salcedo and Dr. Matelliano would have disagreed with in a fully-developed medical opinion, it is sufficient for this reviewing court to note that the ALJ's conclusions were not consistent with the physicians' statements that Almanzar was "75%" impaired, strongly suggesting that the ALJ's failure to obtain a proper medical source statement from them prejudiced Almanzar.  Moreover, as one concrete example, a vocational expert testified at the disability hearing that if Almanzar "need[ed] to sit and stand at will," that "would preclude [certain] jobs" the expert testified Almanzar otherwise believed she could perform.  *Id.* at 78.  Dr. Matelliano's finding that that Almanzar had "very reduced walking distances[ and] poor sitting tolerance[ ]," *id.* at 580, suggests that Almanzar, indeed, may have required this preclusive sit-stand accommodation.

In sum, even if the ALJ did not violate the treating physician rule in minimizing the assessments of Dr. Salcedo and Dr. Mattelliano, the ALJ still erred:  because there was an "obvious gap[ ] in the administrative record" as it related to Almanzar's functioning, the ALJ was obligated make a reasonable effort to fill that gap before rejecting Almanzar's application for disability benefits.  More specifically, the ALJ was required to obtain a medical source statement from a treating source.  Because she did not do so, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Almanzar's application in light of the expanded record.

## II.   MENTAL RFC

Almanzar also argues that the ALJ erred in determining her mental RFC because the ALJ ignored specific limitations about which one of the medical sources in the record opined. Docket Item 10-1 at 18-20. This Court agrees.

The ALJ gave "significant" weight to the opinion of the consulting psychologist, Janine Ippolito, Psy.D. Docket Item 6 at 30. Dr. Ippolito opined in February 2016 that "due to her anxiety and suspected cognitive deficits," Almanzar was "mild[ly]" limited in her ability to "learn new tasks, relate adequately with others, and appropriately deal with stress." *Id.* at 437-38. The ALJ noted that Dr. Ippolito "ha[d] program knowledge[ ] and her assessment [was] consistent with the record as a whole, which establishe[d] that [Almanzar] ha[d] not been treated by or even referred to a mental health professional nor prescribed psychotropic medications." *Id.* (citations omitted). Notwithstanding the weight given to Dr. Ippolito's opinion, and notwithstanding Dr. Ippolito's opinion that Almanzar had some limitations learning new tasks, relating with others, and dealing with stress, the ALJ did not include *any* mental health limitations in Almanzar's RFC, *see id.* at 24. That was error.

As noted above, in determining a claimant's RFC, an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004))). The ALJ's failure to incorporate into the RFC any of the mild limitations included in Dr. Ippolito's opinion, without any explanation

11

or alternative medical source to support the alternate RFC, renders this Court unable to travel the requisite "logical bridge" between the evidence and the mental RFC.

In addition, the ALJ's failure to include any stress-based limitations despite Dr. Ippolito's explicit references to "anxiety" and "stress" constituted independent error. "Because stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of [a claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")); *see also Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments"). The Commissioner's own regulations explain:

> A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. [F]or example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original). Because Dr. Ippolito opined that Almanzar had limitations in dealing with stress, the ALJ was required at least to

consider how those limitations might impact Almanzar's ability to perform each potential job for which she otherwise might have been qualified.

On remand, therefore, the ALJ should consider and specifically address the impact of Almanzar's response to stress on her ability to work.  The ALJ also must consider—and either incorporate or explain her reasons for rejecting—Dr. Ippolito's recommended limitations in learning new tasks and relating with others.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Almanzar's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     August 4, 2020
             Buffalo, New York

                                                */s/ Hon. Lawrence J. Vilardo*
                                               LAWRENCE J. VILARDO
                                               UNITED STATES DISTRICT JUDGE